**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Valerie Leland, et al.,

Plaintiffs,

v.

County of Yavapai, et al.,

Defendants.

No. CV-17-8159-PCT-SPL (DMF)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE U.S. DISTRICT JUDGE STEVEN P. LOGAN:**

This Report and Recommendation hereby amends the Order at Doc. 161 pursuant to LRCiv 72.2(a)(1), which requires a report and recommendation regarding the nature of relief.

Plaintiffs Valerie Leland and Julia Muncy, the daughter and mother of Francis Naomi Wright, who died while detained in the Yavapai County Jail, brought this civil rights action for alleged constitutional and state law violations against Yavapai County, numerous County employees[1], Wexford Health Sources, Inc., and numerous Wexford employees[2]. (Doc. 13, Ex. 1.) Plaintiffs initiated this action in Yavapai County Superior

[1] The "County Defendants" or "Yavapai County Defendants" are Yavapai County, Cody Winton, Jessica Barbey, Paul and Kelly Kellerman, Rogelio Chavez, Garrett Russell, and Joe and Andrea Valdez.

[2] Wexford Health Service, Inc. ("Wexford") is a privately-owned corporation contracted to provide medical care to detainees in the Yavapai County Jail. The nurses named as Defendants—Valerie Whitcomb, Deborah Gallihar, Debra Wagner, Shirley Mitchell, and Theresa Goble—and Defendant Dr. Wilkinson were all Wexford employees at the relevant time. Together, these defendants are referred to as "Wexford Defendants."

Court on December 29, 2016. (Doc. 1.) In April 2017, Wexford Defendants removed the action to federal court. (*Id.*)

A Case Management Order issued on November 2, 2017, allowing approximately one year for fact discovery and setting an expert disclosure and discovery schedule that provided for Plaintiffs' expert disclosures on or by May 4, 2018, Defendants' expert disclosures on or by June 22, 2018, and rebuttal expert disclosures due on or by August 13, 2018. (Docs. 28, 77, 93.) Rebuttal disclosures were expressly "limited to responding to opinions stated by initial experts." (*Id.*) The Scheduling Order also set an expert depositions deadline for November 2, 2018. (Doc. 28) The Court's Order was clear about the extent of expert disclosure required by the above referenced deadlines:

> As stated in the Advisory Committee Notes to Rule 26 (1993 Amendments), expert reports under Rule 26(a)(2)(B) must set forth "the testimony the witness is expected to present during direct examination, together with the reasons therefor." Full and complete disclosures of such testimony are required on the dates set forth above; absent extraordinary circumstances, parties will not be permitted to supplement expert reports after these dates. The Court notes, however, that it usually permits parties to present opinions of their experts that were elicited by opposing counsel during depositions of the experts. Counsel should depose experts with this fact in mind.

(Doc. 28 at 3, lines 10-17.)

This matter is before the Court on Plaintiffs' Motion to Exclude Untimely Expert Opinions (Doc. 131), to which a response (Doc. 134) and a reply (Doc. 138) have been filed. District Judge Logan referred this matter to undersigned (Docs. 14, 85, 144 at 3, lines 27-28). The Court will recommend that the District Judge grant the motion for the reasons set forth below and consistent with District Judge Logan's ruling on late expert disclosures by the County Defendants.[3] (Doc. 144.)

---

[3] This Report and Recommendation directly incorporates much of the language of District Judge Logan's Order precluding late expert disclosures by the County Defendants (Doc. 144) without quotations or citation to District Judge Logan's Order, including the entire background section and Rule 37 section herein.

## I. BACKGROUND

Plaintiffs' claims stem from Wright's death during her confinement as a pretrial detainee in the Yavapai County Jail in 2016. (Doc. 13-1 ¶ 17.) In their First Amended Complaint, Plaintiffs allege the following:

On May 9, 2016, Wright was arrested and booked into the County Jail. (*Id.*) During the booking process, she reported that she took drugs, that she had withdrawal problems, that she was currently detoxing, and that she had fainted or had a head injury within the past 6 months. (*Id.* ¶¶ 17–21.) Around 10:00 p.m. that night, Wright was assigned to the jail's infirmary for observation. (*Id.* ¶ 25.) Beginning the morning of May 10, 2016, Wright's health began to deteriorate, and she repeatedly requested medical assistance orally, in writing, and, eventually, through use of the emergency button in her cell. (*Id.* ¶¶ 31-38, 49, 52, 55, 63, 89.) Other detainees also called for help over the intercom system and emergency buttons in their cells. (*Id.* ¶¶ 64, 78, 84.) Wright suffered from headaches, diarrhea, nausea, vomiting, tremors, chills, body aches, and syncope episodes, and she became more and more pale. (*Id.* ¶¶ 37, 41, 46, 52-53, 81, 90.) By the early morning of May 11, 2016, Wright began to suffer seizures and pass out, which caused her to hit her head on the floor. (*Id.* ¶¶ 58, 61, 75–77, 84.)

County Defendant detention officers Winton, Barbey, Kellerman, Chavez, Russell, and Sergeant Valdez all interacted with Wright, directly observed her interactions with medical staff, and were present when she requested medical assistance or took her written requests for medical attention. (*Id.* ¶¶ 28, 30, 34, 37-38, 40, 44-45, 55.) Wright specifically requested assistance from Winton and Russell, but they walked away and did not help her. (*Id.* ¶¶ 55-56, 71-72.) Russell and Valdez responded to the cell when Wright passed out and fell and hit her head, and, after she passed out a second time, they revived her with smelling salts and thereafter joked about her condition. (*Id.* ¶¶ 76-79, 84-85, 87.) Neither Defendant nurses nor Defendant detention officers would help Wright, despite her requests for help. (*Id.* ¶¶ 89, 94.) Although Dr. Wilkinson was in the medical office across the hall

from Wright's cell, he did not come out to check on Wright. (*Id.* ¶¶ 88, 96.) At approximately 4:00 p.m. on May 11, 2016, Wright was found dead. (*Id.* ¶ 95.)

Plaintiffs set forth three claims for relief. In Count One, they assert Eighth and Fourteenth Amendment claims under 42 U.S.C. § 1983 based on the denial of medical care. (*Id.* ¶¶ 97-102.) In Count Two, they assert a claim for wrongful death under Arizona Revised Statutes § 12-611. (*Id.* ¶¶ 103-109.) And in Count Three, Plaintiffs assert a Fourteenth Amendment claim under § 1983 based on interference with the right to family society and companionship. (*Id.* ¶¶ 110-112.)

## II. FEDERAL RULE OF CIVIL PROCEDURE 37

Each party must disclose expert witnesses by a certain deadline set by the court. Fed. R. Civ. P. 26(a)(2). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); Fed. R. Civ. P. 37(c)(1) ("[i]f a party fails to provide information or identify a witness as required under Rule 26(a) . . ., the party is not allowed to use that information"). The information may be used at trial, however, if the party's failure to disclose the required information is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The party making the late disclosure bears the burden of establishing that the failure to disclose is substantially justified or harmless. *See Yeti by Molly*, 259 F.3d at 1107. In determining whether substantial justification or harmlessness exist, a court considers (1) prejudice or surprise to the other party, (2) the ability of that party to cure the prejudice, (3) the likelihood of disruption of trial, and (4) willfulness or bad faith. *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017). Still, a court is not required to make a finding of willfulness or bad faith before excluding expert testimony at trial. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (rejecting the notion that the court must find willfulness or bad faith to exclude evidence because Rule 37 is "a self-executing, automatic sanction" meant to induce disclosure) (quotation omitted).

**III. DISCUSSION**

Plaintiffs move the Court for an order precluding experts Dr. Steven Shelton, MD, and Terry S. Fillman, RN for Wexford Defendants from offering opinions which are set forth in their November, 2018, reports titled "Supplemental Expert Reports." These reports are late under the Case Management Order. (Doc. 28.)

The governing Case Management Order was issued on November 2, 2017. It allowed approximately one year for fact discovery and set an expert disclosure and discovery schedule that provided for Plaintiffs' expert disclosures on or by May 4, 2018, Defendants' expert disclosures on or by June 22, 2018, and rebuttal expert disclosures due on or by July 20, 2018. (Docs. 28, 77.) Rebuttal disclosures were expressly "limited to responding to opinions stated by initial experts." (Doc. 28 at 2, lines 20-21.)

In November, 2018, Wexford Defendants disclosed the expert reports at issue in the motion before the Court. Wexford Defendants argue that the reports were simply supplements and not untimely because the expert reports were within the deadlines for supplementation of MIDP disclosures. This argument is not well taken. The Court agrees with Plaintiffs position:

> [Federal Rules of Civil Procedure 26(e)] requires a "party who has made a disclosure under Rule 26(a)" to "supplement or correct its disclosure" in "a timely manner if the party learns that in some material respect the disclosure … is incomplete or incorrect." Rule 26(e)(1)(A). The rule also applies to experts. *See* Rule 26(e)(2). But parties "may not use the supplement process to extend the deadline for expert disclosures and disclose information that should have been included in the original disclosure." *See* Baicker-McKee et al., Federal Civil Rules Handbook, 761 (2018). Rule 26(e) "creates a duty to supplement, not a right." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (internal citations omitted). Rule 26(e) does not "create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Id.*
>
> "Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Id. See also, e.g., SD3, LLP*

> *v. Rea*, 71 F. Supp. 3d 189, 195 (D.D.C. 2014) (striking untimely expert opinion because it was in reality "the type of bolstering of expert opinion that Rule 26(e) does not contemplate"); *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1171 (D. Colo. 2006) ("(Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be 'desirable' or 'necessary' to their case.").

(Doc. 138 at 2-3.)

The November, 2018, disclosure of the Shelton and Fillman expert reports constitute untimely disclosure. Wexford Defendants bear the burden to show that substantial justification or harmlessness exists. They have not done so. All disclosure and discovery deadlines have passed, and the dispositive motions deadline also passed in January, 2019. (Doc. 28.)

In the Case Management Order setting these deadlines, the Court explicitly stated that expert reports must set forth the expected witness testimony and that "[f]ull and complete disclosures of such testimony are required on the dates set forth above." (Doc. 28 at 3.) The Court further noted that "[p]arties who fail to timely disclose relevant information will be precluded from using it in the case and may be subject to other sanctions." (*Id*. at 2 n.1.) Plaintiffs were entitled to assume that the Court meant this, that Rule 37(c)(1) means what it says, and that untimely disclosed evidence would be excluded from evidence at trial. Reopening discovery and setting new deadlines for depositions and additional expert reports at this juncture would lead to increased costs to Plaintiffs and a substantial delay and inconvenience for the Court. The Ninth Circuit has held that "[d]isruption to the schedule of the court and other parties . . . is not harmless." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1061-62 (9th Cir. 2005) (finding that trial court did not abuse its discretion in excluding expert witness not identified by the case management deadline). This is true even where the trial date is not imminent. *See id.* at 62 (exclusion of witness testimony appropriate even though "the ultimate trial date was still some months away"). Thus, the untimely disclosures prejudice Plaintiffs and are not harmless.

Wexford Defendants' arguments for substantial justification and their attempt to blame Plaintiffs for the late disclosure are unavailing. If Wexford Defendants believed that it was premature to make their initial expert disclosures before the June 22, 2018 deadline, they could have sought an extension of time, but they failed to do so.

Wexford Defendants complain that Plaintiffs engaged in "sandbagging" when Plaintiffs timely disclosed rebuttal expert reports. (Doc. 134 at 8, lines 22-26.) If Plaintiffs did engage in "sandbagging," it was in violation of the Court's Case Management Order ("Rebuttal disclosures shall be limited to responding to opinions stated by initial experts." Doc. 28 at 2, lines 20-21.) Wexford Defendants could have objected and brought such to the Court's attention in a timely manner. Instead of doing so, Wexford Defendants created their own remedy in the form of late supplemental disclosures after there was no further opportunity for any discovery by the Plaintiffs to take place and the case was otherwise ready to be presented on motion and/or tried.

Rebuttal reports need not have been limited to Plaintiffs' experts reports. Defendants could have sought Court leave for additional time to submit their own experts' rebuttal reports. Further, upon receiving Plaintiffs' rebuttal reports in August, 2018, or upon deposing Plaintiffs' experts, Wexford Defendants could have moved to preclude any opinions by Plaintiffs' experts that went beyond what the Case Management Order directed. Wexford Defendants deposed Plaintiffs' expert, Dr. Wilcox, on September 13, 2018, but did not thereafter raise any issue about the scope of Dr. Wilcox's opinions at his deposition. Had Defendants done so, the Court would have been able to address expert opinions issues during the discovery period, not months afterward.

In failing to exercise due diligence and not using the avenues available to timely bring to the Court's attention any problems with Plaintiffs' expert rebuttal reports or expert deposition testimony, Wexford Defendants cannot justify their late expert disclosures. *See Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (affirming district court's exclusion of the plaintiff's expert witness report that was filed 6 weeks late because the plaintiff did not request an extension of time and "failed to justify his disregard

for the Court's" pretrial order). Over a month ago, the parties represented to the Court that they are ready for the case to be set for trial. (Doc. 159.) Re-opening discovery at this time to allow more expert disclosure and discovery would be prejudicial and harmful.

Wexford Defendants have not demonstrated that their late disclosures of expert opinions were substantially justified or harmless. The Court will therefore recommend that District Judge Logan grant Plaintiffs' Motion to Exclude. (Doc. 131.)

Accordingly,

**IT IS THEREFORE RECOMMENDED that** Plaintiffs' Motion to Exclude Untimely Expert Opinions (Doc. 131) **be granted**; thus, it is recommended that expert opinions reflected in the supplemental reports of the experts for Wexford Defendants be excluded.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72; *see also* LRCiv 72.2(a)(1). The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 15th day of March, 2019.

Deborah M. Fine

Honorable Deborah M. Fine
United States Magistrate Judge