**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie Leland, et al., | No. CV-17-08159-PCT-SPL |
| Plaintiffs, | **ORDER** |
| vs. | |
| County of Yavapai, et al., | |
| Defendants. | |

Before the Court is Plaintiffs' Renewed Motion to Strike Defendants' Notice of Non-Parties at Fault (Doc. 172), Yavapai Defendants' Response (Doc. 174), Wexford Defendants' Joinder (Doc. 175), and Plaintiffs' Reply (Doc. 176). For the following reasons, the Motion will be granted.

**I.      Background**

On May 9, 2016, decedent Frances Wright was arrested for failing to appear for a previously scheduled court hearing. (Doc. 13-1 at 4.) At the time of her arrest, Ms. Wright was at the home of Andrea Neff. (Doc. 174 at 4.) Ms. Wright allegedly ingested a large amount of drugs immediately prior to being arrested, though it is unknown whether Ms. Neff has any knowledge of such drug use. (Doc. 174 at 4-5.) Upon being arrested and booked into the Yavapai County jail, Ms. Wright was assigned to the jail's infirmary because she self-reported on her medical intake form that she had taken drugs at 10 a.m. that morning, was currently detoxing, and had issues with withdrawing. (Doc. 13-1 at 3; Doc. 192, Ex. G.)

In the infirmary cell with Ms. Wright were Johanna Hoffman, Katharine Davenport, Teddy Brake, and Elizabeth Blevins (collectively, "Ms. Wright's cellmates"). (Doc. 174 at 6.) Ms. Wright allegedly told Ms. Davenport, Ms. Hoffman, and Ms. Brake that she had ingested a large amount of drugs immediately before she was arrested. (Doc. 174 at 6.) It is not clear whether Ms. Blevins knew this information. (Doc. 174 at 6.) During Ms. Wright's medical deterioration over a period of days, Ms. Wright's cellmates notified medical professionals and other jail personnel about Ms. Wright's medical condition by using the jail call button. (Doc. 174 at 6.) They did not inform anyone of Ms. Wright's alleged statements regarding her drug use prior to being arrested. (Doc. 174 at 6.)

On August 8, 2017, this case was removed from Yavapai County Superior Court to this Court. (Doc. 1.) On January 12, 2018, Defendants filed a Notice of Nonparties at Fault, pursuant to A.R.S. § 12-2506(B) and Ariz. R. Civ. P. 26(b)(5), which named Ms. Wright, Ms. Neff, Ms. Wright's cellmates, and "Ms. Wright's unidentified illegal drug dealers or suppliers" as nonparties at fault. (Docs. 51, 52.) On February 5, 2018, Plaintiffs filed a motion to strike Defendants' Notice. (Doc. 56.) On February 20, 2018, Defendants responded (Docs. 57, 58), and Plaintiffs replied on February 27, 2018 (Doc. 62). On March 9, 2018, this Court struck Ms. Wright as a nonparty and denied the motion without prejudice as to the others because discovery had not yet been completed. (Doc. 63.) On April 12, 2019, Plaintiffs filed this motion (Doc. 172), which is fully briefed (Docs. 174, 175, 176).

**II.  Discussion**

Plaintiffs argue that Defendants' Notice of Nonparties at Fault should be struck because they have not shown how Ms. Neff and Ms. Wright's cellmates owed Ms. Wright any duty. (Doc. 172 at 1-2.) Additionally, they argue that Defendants have not attempted to identify Ms. Wright's drug dealers or suppliers; thus, they should also be struck from the notice. (Doc. 172 at 3-4.) Defendants concede that they do not have enough evidence to support naming Ms. Wright's unknown drug dealers as nonparties at fault in this case

and, thus, withdraw their designation. (Doc. 174 at 2.) However, Defendants argue that an express duty of care or public policy supports their designation of nonparties at fault for Andrea Neff and Ms. Wright's cellmates. (Doc. 174 at 4.) As to Ms. Neff, they argue that "if Neff knew Wright had either ingested her drug stash or hidden it on her person, then Neff had an obligation to reveal that information to the arresting officers so Wright could be appropriately treated." (Doc. 174 at 4.) As to Ms. Wright's cellmates, they argue that the cellmates each "voluntarily undertook to render aid to Wright, or to help secure aid for her, triggering a duty to her." (Doc. 174 at 6.) Further, they argue that because the cellmates "intentionally withheld" the information about Ms. Wright's alleged drug ingestion, they left Ms. Wright "worse off" than before their involvement. (Doc. 174 at 6.)

**III.    Analysis**

    **A.    Legal Standard**

Arizona Rule of Civil Procedure 26(b)(5), Arizona's nonparty at fault notice disclosure, states that:

> "[n]o later than 150 days after filing its answer, a party must serve on all other parties--and should file with the court--a notice disclosing any person: (A) not currently or formerly named as a party in the action; and (B) whom the party alleges was wholly or partly at fault under A.R.S. § 12-2506(B). The notice must disclose the identity and location of the nonparty allegedly at fault, and the facts supporting the allegation of fault."

Ariz. R. Civ. P. 26(b)(5). "At its heart, Rule 26(b)(5) is in service of a defendant's substantive right to have the jury assess fault to a nonparty – regardless of whether the plaintiff may hail that nonparty into court." *State v. Mahoney in & for Cty. of Maricopa*, No. 1 CA-SA 19-0067, 2019 WL 2128212, at *3 (Ariz. Ct. App. May 16, 2019). *Mahoney* clarified that the court in *Scottsdale Ins. Co. v. Cendejas*, 220 Ariz. 281, 286 (Ct. App. 2009) did not rule that "a notice of nonparty at fault that lacks the name and location of the nonparty necessarily fails under Rule 26(b)(5) unless the defendant can show it tried without success to find the nonparty." *Id.* Indeed, under A.R.S. Section 12-2506(A), "the issue is whether the defendant's notice discloses 'facts sufficient to establish *the existence*

of another tortfeasor, despite the inability to further identify the tortfeasor.'" *Id.*, at *2 (quoting *Rosner v. Denim & Diamonds, Inc.*, 188 Ariz. 431, 433 (Ct. App. 1996)). Therefore, "a notice of nonparty at fault is not necessarily defective if it lacks information that would enable the plaintiff to sue the nonparty directly." *Id.*, at *3.

"Because an allegation of comparative fault relating to nonparties is an affirmative defense, the defendant must prove the nonparty is actually at fault. As such, the defendant must offer evidence that the nonparty owed a duty to the plaintiff, that the duty was breached, and that the breach caused injury to the plaintiff." *Hinshaw v. United States*, 264 F. Supp. 3d 1026, 1039 (D. Ariz. 2017); *see Ontiveros v. Borak*, 667 P.2d 200, 204 (Ariz. 1983). Typically, whether a duty exists is a question for the court as a matter of law. *Markowitz v. Arizona Parks Bd.*, 706 P.2d 364, 366 (Ariz. 1985). A duty requires that a person "conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Id.*; *see Gipson v. Kasey*, 214 Ariz. 141, 143 (2007). A duty need not exist through a special or direct relationship. *Gipson*, 214 Ariz. at 145. Rather, a duty may exist "when public policy has supported the existence of a legal obligation … for the protection of persons with whom no preexisting relationship existed." *Id.* (internal quotations omitted).

As a general matter, an individual is under no duty to voluntarily help a rescuer. *See Miller v. Arnal Corp.*, 129 Ariz. 484, 487 (Ct. App. 1981) (confirming that "the law presently imposes no liability upon those who stand idly by and fail to rescue a stranger who is in danger."). Further, it is well-settled that "the existence of a statute criminalizing conduct is one aspect of Arizona law supporting the recognition of [a] duty." *Id.* at 146 (quoting *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253 (1994)) (internal quotations omitted). However, a criminal statute establishes a tort duty only where the statute is "designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Id.* (internal quotations and citations omitted).

Arizona Revised Statute Section 13-2403 states that a person commits "refusing to aid a peace officer" if the person, "upon a reasonable command by a person reasonably known to be a peace officer," knowingly refuses or fails to aid the officer in "effectuating or securing an arrest" or in "preventing the commission by another of any offense." A.R.S. § 13-2403(A)(1)-(2). Additionally, Arizona Revised Statute Section 32-1471 states that a person who renders aid in an emergency situation will not be held liable for damages as a result of an act or omission associated with such aid, so long as the care was provided gratuitously and in good faith, and the person was not grossly negligent. A.R.S. § 32-1471.

**B.     Discussion**

First, the Notice of Nonparties at fault is not defective, and the Court will not strike it on that basis. Second, Defendants have not identified which Arizona statutes (or which public policies) it is relying upon for their proposition that Ms. Neff and Ms. Wright's cellmates owed Ms. Wright a duty of care. As to Ms. Neff, assuming Defendants are referring to Arizona's refusal to aid a peace officer statute, such statute requires that the officer "command" the person to do something, to which the person then "knowingly refuses or fails" to do. *See* A.R.S. § 13-2403(A). Furthermore, the failure or refusal must be in connection with "effectuating or securing an arrest" or "preventing the commission by another of any offense." *Id.* Defendants have not alleged that the officers arresting Ms. Neff and Ms. Wright asked Ms. Neff to do anything. Even if Defendants had, however, Defendants cannot say that Ms. Neff knew this information and then refused or failed to provide it. Further, it appears this statute is aimed at helping police officers make arrests and prevent others from committing new crimes. It is not aimed at helping police officers, while making an arrest, become aware of possible health issues concerning the persons they are arresting. (*See* Doc. 174 at 4.) In short, Defendants have not shown how Ms. Neff owed Ms. Wright any legal duty, and the Court declines to find a duty of care, as a matter of law, on these facts.

5

| | |
|---|---|
| 1 | As to Ms. Wright's cellmates, Defendants argue that they (1) voluntarily undertook to provide emergency services to Ms. Wright and (2) left Ms. Wright in a "worse off" position by not informing the medical professionals, after calling for help, that Ms. Wright had apparently ingested a large amount of drugs before being arrested. (*See* Doc. 174 at 6.) As an initial matter, Ms. Wright's cellmates were under no duty to help Ms. Wright. The Court declines to find that Arizona's Good Samaritan law, A.R.S. Section 32-1471, which would govern the cellmates' actions in deciding to undertake emergency aid, applies in this case. Ms. Wright's cellmates do not qualify as individuals who "render[ed] emergency care" to Ms. Wright "at the scene of an emergency occurrence." *See* A.R.S. § 32-1471. Because Ms. Wright's cellmates were under no duty to help Ms. Wright and because their actions in "helping" her do not amount to providing emergency aid in an emergency situation, there was also no duty to terminate their actions reasonably. However, the Court notes that Defendants are incorrect in their assertion that once an individual decides to provide emergency aid, she must continue to do so until it is reasonable to stop. (Doc. 174 at 5.) The case they cite to for that proposition explicitly discusses the Second Restatement s 323, which provides that one is free stop aiding an individual whenever she wishes and for whatever the purpose, as long as she does not leave the other "worse off." *See Miller*, 129 Ariz. at 489 (quoting Restatement (Second) of Torts s 323, comment (c)). In any event, Defendants have not shown that Ms. Wright's cellmates owed any legal duty to Ms. Wright. As such, they cannot be at fault for Ms. Wright's death. |

**IV. Conclusion**

Accordingly, Plaintiffs' Renewed Motion to Strike Defendants' Notice of Non-Parties at Fault (Doc. 172) is **granted**.

Dated this 27th day of June, 2019.

Honorable Steven P. Logan
United States District Judge

6